**STATE OF WASHINGTON**
**SPOKANE COUNTY SUPERIOR COURT**

| | |
|---|---|
| LEVI KARKIAINEN,<br>Plaintiff,<br>v.<br>CENTRAL PORTFOLIO CONTROL, INC., a Minnesota Corporation and Collection Agency,<br>Defendant. | NO.<br>PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT AND THE FAIR CREDIT REPORTING ACT |

COMES NOW, Plaintiff, LEVI KARKIAINEN, by and through his counsel, ROBERT MITCHELL, and complains against the Defendant as follows:

## I. STATEMENT OF THE CASE

1.1 Plaintiff is an Honorable, Disabled Army Veteran.

1.2 Defendant is a collection agency that specializes in collecting doubtful medical debts that were never owed, paid by insurance, partially paid, or qualified for Charity Care.

1.3 These medical debts are assigned by unreliable medical providers to an unreliable servicing company.

1.4 The servicing company then assigns the unreliable accounts to Defendant for collections and often times, credit reporting.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

1.5 Medical bills ruin too many Americans' financial lives. According to the Consumer Financial Protection Bureau, nearly one in five credit reports contain one or more medical debt collection tradelines.[1] Even relatively small medical bills can have devastating consequences for consumers who often have difficulty tracking down who they allegedly owe for what medical care, especially after the bills are assigned to a collection agency.

1.6 In 2019, the Washington State Legislature responded to the growing crisis caused by aggressive collection of medical debts with a series of reforms. Among other things, a collection agency collecting hospital debt must advise consumers of their potential eligibility for financial assistance, known as charity care, in their initial letters seeking to collect on alleged debts for hospital care. RCW 19.16.250(29).

1.7 On April 29, 2019, St. Joseph entered a multimillion-dollar Consent Decree with the Washington State Attorney General, to resolve *State of Washington v. Franciscan Health System d/b/a Chi-Franciscan Health d/b/a St. Joseph Medical Center*, Pierce County Superior Court Cause No. 17-2-10901-2. *See* **EX. A**.

1.8 The Consent Decree resolved $25 million of St. Joseph medical accounts incurred between January 1, 2012 and July 1, 2017. *Id.* at p. 10.

1.9 Surprise Medical Bills are so pervasive that Congress was forced to include protections against surprise medical billing in the OMNIBUS SPENDING ACT in 2020. See H.R. 133, Consolidated Appropriations Act, 2021, 116th Congress (2019-2020).

---

[1] CFPB, Consumer credit reports: A study of medical and non-medical collections at 4 (Dec. 2014), available at https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

1.10 The largest Physicians Group in the nation is currently the subject of a class action lawsuit involving surprise medical debts and balance billing, claims eerily similar to this case. See Sia Fraser et al. v. Team Health Holdings, Inc., U.S. Dist. Court for the Northern District of California, Civil Cause No. 3:20-cv-04600.

1.11 At least one local hospital group was sued for similar conduct. See Fangsrud von Esch v. Legacy Salmon Creek and Asset Systems, Inc., U.S. Dist. Court for the W.D. Wash., Civil Cause No. 16-cv-5842-BHS. (This case resulted in the voluntary discharge of 2,500 suspected balance billing accounts, likely to the tune of seven or eight figures).

1.12 Balance billing and surprise medical debts are a common complaint in the United States. See **"The Nonprofit Hospital That Makes Millions, Owns a Collection Agency and Relentlessly Sues the Poor"** Pro Publica article at https://www.propublica.org/article/methodist-le-bonheur-healthcare-sues-poor-medical-debt

1.13 Defendant is currently collecting and credit reporting a portfolio of surprise medical debts that are the result of balance billing.

1.14 Many of the accounts Defendant seeks to collect were paid, partially paid, or should have been discharged through health insurance or Charity Care.

1.15 In this case, Defendant is harassing Plaintiff (a seriously disabled veteran) in an attempt to force Plaintiff to pay a medical debt he simply does not owe.

1.16 Plaintiff has suffered injury and damages as a result of Defendant's unfair and deceptive business practices.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

## II. PARTIES

2.1 Plaintiff, LEVI KARKIAINEN is a resident of Spokane County, Washington.

2.2 Plaintiff obtained medical services from St. Clare Hospital (a Chi Franciscan entity), which he used primarily for personal, family, and household purposes.

2.3 Defendant alleges that Plaintiff defaulted on the account by failing to make timely payments.

2.4 Plaintiff is therefore a "consumer" as defined by 15 U.S.C. § 1692(a)(3) (the Fair Debt Collection Practices Act) and a "debtor" as defined by RCW 19.16.100(8) (Washington's Collection Agency Act), and a "person" as defined by RCW 19.86.010(1) (Washington's Consumer Protection Act), and Plaintiff acted as a "consumer" "debtor" and "person" at all times relevant to this litigation.

2.5 Defendant, CENTRAL PORTFOLIO CONTROL, INC., a Minnesota Corporation, (hereinafter "Central" or "Defendant"), is a collection agency and a business which regularly collects defaulted accounts originally owed to others.

2.6 The principal purpose of Defendant's business is the collection of third-party debts originally owed to others.

2.7 Defendant is a licensed collection agency and conducts business in Washington State under UBI No. 602 222 599.

2.8 Defendant is therefore a "collection agency" as defined by the WCAA, a "person" as defined by the CPA, a "debt collector" as defined by the FDCPA, and Defendant acted as such at all times relevant to this complaint.

2.9 Defendant made attempts to collect the debts at the heart of this lawsuit.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

## III. JURISDICTION AND VENUE

3.1 Jurisdiction and Venue in Spokane County Superior Court are appropriate where all acts at issue and described herein occurred in Spokane County Washington, and where the injury to Plaintiff occurred in Spokane County Washington, and where the Defendant has engaged in substantial business contacts in Spokane County Washington, and where Defendant has already submitted to this jurisdiction by attempting to collect a medical debt from Plaintiff in this jurisdiction, and where the Plaintiff prays for injunctive relief that exceeds the jurisdiction of the State District Court. RCW 4.12.020; 4.12.025; 4.28.180; 4.28.185; and 7.40.010.

3.2 Defendant is liable unto Plaintiff pursuant to the provisions of the Washington Collection Agency Act (WCAA), RCW 19.16 *et seq.*, the Consumer Protection Act (CPA), RCW 19.86 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*, as well as other applicable state and federal laws.

## IV. FACTS

4.1 Plaintiff, LEVI KARKIAINEN is an honorably discharged, service connected, disabled Army Veteran.

4.2 In 2019, while residing in Tacoma, Plaintiff obtained medical services from St. Clare Hospital, in Tacoma, Washington.

4.3 St. Clare Hospital is a Chi Franciscan entity.

4.4 Defendant is aware that in 2019, Chi Franciscan entered a consent decree with Washington's Attorney General, for failing to correctly offer and process Charity Care Applications. **EX. A.**



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

4.5 Plaintiff received medical services from St. Clare Hospital just a few months after the Court entered the above-referenced Consent Decree.

4.6 The medical services Plaintiff received were directly related to Plaintiff's service-connected disability.

4.7 When the Department of Veterans Affairs refused to pay for the emergency medical services, Plaintiff completed a Charity Care Application.

4.8 On September 25, 2019, St. Clare Hospital reviewed Plaintiff's consumer credit report to evaluate his Charity Care Application.

4.9 St. Clare Hospital either granted, or never responded to Plaintiff's Charity Care Application.

4.10 Defendant is now attempting to collect the Charity Care Account from Plaintiff.

4.11 On April 21, 2021, at **8:08 A.M.**, Defendant sent a text message to Plaintiff's cellular telephone stating in pertinent part: "LEVI, We have an important message for you from CPC. This communication is from a licensed bill collector. Please call us at 888-846-6092."

4.12 Defendant's April 21, 2021 communication was Defendant's first communication with Plaintiff.

4.13 Defendant's text message did not state that the communication was an attempt to collect a debt.

4.14 Defendant's text message did not state that any information obtained would be used for the purpose of collecting a debt.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

4.15 Defendant's text message did not state that Plaintiff has the right to dispute the debt.

4.16 Defendant's text message used a false name: "CPC."

4.17 Defendant's text message did not contain a statement informing Plaintiff of his right to request the original account number or redacted original account number assigned to the debt, or the date of the last payment.

4.18 Defendant's text message did not contain a statement informing Plaintiff of his right to request:

(A) The name and address of the medical creditor;

(B) The date, dates, or date range of service;

(C) The health care services provided to Plaintiff as indicated by the health care provider in a statement provided to the licensee;

(D) The amount of principal for any medical debt or debts incurred;

(E) Any adjustment to the bill, such as negotiated insurance rates or other discounts;

(F) The amount of any payments received, whether from the patient or any other party;

(G) Any interest or fees; and

(H) Whether Plaintiff was found eligible for charity care or other reductions and, if so, **the amount due after all charity care and other reductions have been applied to the itemized statement.**



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

4.19 Defendant's text message did not include a notice that Plaintiff may be eligible for charity care from the hospital, together with the contact information for the hospital.

4.20 Defendant attempted to collect the medical claim related to hospital debt during the pendency of an application for charity care sponsorship or an appeal from a final determination of charity care sponsorship status.

4.21 Defendant attempted to collect a debt Plaintiff does not owe.

4.22 Plaintiff telephoned the number listed in Defendant's text message.

4.23 Defendant informed Plaintiff that the communications were related to the old medical account.

4.24 Defendant never informed Plaintiff that he was entitled to apply for Charity Care.

4.25 Plaintiff telephoned St. Clare Hospital and spoke with the billing department.

4.26 **St. Clare Hospital informed Plaintiff that he qualified for Charity Care**, but there was some information missing from his file, so St. Clare Hospital sent the debt to collections.

4.27 Defendant is attempting to force Plaintiff to pay an account that is currently being processed for Charity Care.

4.28 Defendant's acts and practices against this honorable disabled veteran were unfair, deceptive, and outrageous.

4.29 Defendant's unfair, deceptive, and outrageous acts and practices against this honorable disabled veteran occurred in the course of trade and commerce.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

4.30 Defendant's unfair, deceptive, and outrageous acts and practices against this honorable disabled veteran involve matters of public interest (business, credit reporting, debt collection, *inter alia*).

4.31 Defendant's unfair, deceptive, and outrageous acts and practices against this honorable disabled veteran have the capacity for repetition.

4.32 Plaintiff was injured and damaged in his person and property by Defendant's unfair, deceptive and outrageous acts and practices.

4.33 Defendant's unfair, deceptive and outrageous acts and practices were a direct and proximate cause of Plaintiff's injuries and damages.

4.34 Defendant's unfair and deceptive acts and practices were intentional, willful, wanton, unfair, unconscionable, outrageous, and completely unacceptable in a civilized society.

4.35 Defendant's unfair and deceptive acts and practices illustrate why an injunction is necessary to protect Plaintiff and other Washington debtors from similar harm.

## V. FAIR DEBT COLLECTION PRACTICES ACT VIOLATION

(Application of the Statute)

5.1 Plaintiff re-alleges paragraphs I. through IV., inclusive as though fully set forth herein.

5.2 Pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), a "consumer" or "debtor" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

5.3 Pursuant to the FDCPA, the term "debt" means: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

5.4 Pursuant to the FDCPA, the term "debt collector" means: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

5.5 Defendant is a "debt collector" as defined by the FDCPA, and Defendant attempted to collect a consumer debt from Plaintiff.

5.6 The FDCPA applies in this case because the Plaintiff is a "debtor," the debt at the heart of this case is a "consumer debt," which arose from a transaction in which the services are primarily for personal, family, or household purposes, and the Defendant is a "debt collector" which attempted to collect a debt originally owed to a third party.

## VI. FIRST CAUSE OF ACTION

Fair Debt Collection Practices Act Violation

6.1 Plaintiff re-alleges paragraphs I. through V., inclusive as though fully set forth herein.

6.2 The Fair Debt Collection Practices Act (hereinafter "FDCPA") states in pertinent part that debt collector cannot:

A. "…engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

B. Falsely represent "..the character, amount, or legal status of a debt…." 15 U.S.C. § 1692e(2).

C. Use "…any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

D. Use "…unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

E. Collect or attempt to collect "any amount …unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

6.3 Additionally, the FDCPA requires:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing – 1) the amount of the debt;…3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; 4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and….

15 U.S.C. §1692g(1)(2) and (4).

6.4 In this case, Defendant violated the above-referenced statutory provisions by attempting to force an honorable disabled veteran to pay a $6,000.00 medical debt that he simply does not owe, and which is currently pending a Charity Care Application.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

6.5 Defendant failed to provide Plaintiff with notices required by state and federal law.

6.6 Defendant also used a false name.

6.7 Defendant's actions were unfair, deceptive, oppressive, outrageous, willful, wanton, unfair, and unconscionable and intentionally designed to injure and damage Plaintiff.

6.8 Defendant's unfair, deceptive, oppressive, outrageous, intentional, willful, wanton, unfair, unconscionable and intentional acts and practices injured and damaged Plaintiff.

6.9 Defendant's unfair, deceptive, oppressive, outrageous, intentional, willful, wanton, unfair, unconscionable and intentional acts and practices were a direct and proximate cause of Plaintiff's injuries and damages.

6.10 Defendant's unfair, deceptive, oppressive, outrageous, intentional, willful, wanton, unfair, unconscionable and intentional acts and practices illustrate why an injunction is necessary to protect Plaintiff and other Washington debtors from similar harm.

## VII. SECOND CAUSE OF ACTION

(*Per Se* Consumer Protection Act – State Collection Agency Act Violation)

7.1 Plaintiff re-alleges paragraphs I. through VI., inclusive as though fully set forth herein.

7.2 Washington's Consumer Protection Act (hereinafter "CPA") states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

7.3 The CPA applies to the actions at issue herein because the Plaintiff is a "person" and the Defendant is a "person," the complaint involves conduct which occurred in the course of trade/commerce, the Plaintiff was damaged in his property by Defendant's unfair and



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

deceptive acts and practices, and the complaint involves a matter of public interest which is capable of repetition and will likely affect other consumers in this state.

7.4 Additionally, Washington's Collection Agency Act (hereinafter "WCAA") prohibits collection agencies from engaging in certain unfair and/or deceptive collection acts or practices. RCW 19.16.250(1 – 29).

7.5 The WCAA states that violations of the WCAA are *per se* CPA violations RCW 19.16.440.

7.6 The "Prohibited Practices" section of the WCAA states in pertinent part that "No licensee or employee of a licensee shall: Communicate with a debtor or anyone else in such a manner as to harass, intimidate, threaten, or embarrass a debtor..." RCW 19.16.250(13).

7.7 The "Prohibited Practices" section of the WCAA states in pertinent part that "No licensee or employee of a licensee shall:"

> Collect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs. A licensee may collect or attempt to collect collection costs and fees, including contingent collection fees, as authorized by a written agreement or contract, between the licensee's client and the debtor, in the collection of a commercial claim. The amount charged to the debtor for collection services shall not exceed thirty-five percent of the commercial claim.

RCW 19.16.250(21).

7.8 The "Prohibited Practices" section of the WCAA states in pertinent part that "No licensee or employee of a licensee shall:"

> If the claim involves medical debt: (a) Fail to include, with the first written notice to the debtor, a statement that informs the debtor of the debtor's right to request the original account number or redacted original account number assigned to the debt, the date of



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

> the last payment, and an itemized statement as provided in (b) of this subsection (28); (b)(i) Fail to provide to the debtor, upon written or oral request by the debtor for more information than is contained in a general balance due letter, an itemized statement free of charge. Unless and until the licensee provides the itemized statement, the licensee must cease all collection efforts. The itemized statement must include: (A) The name and address of the medical creditor; (B) The date, dates, or date range of service; (C) The health care services provided to the patient as indicated by the health care provider in a statement provided to the licensee; (D) The amount of principal for any medical debt or debts incurred; (E) Any adjustment to the bill, such as negotiated insurance rates or other discounts; (F) The amount of any payments received, whether from the patient or any other party; (G) Any interest or fees; and (H) Whether the patient was found eligible for charity care or other reductions and, if so, the amount due after all charity care and other reductions have been applied to the itemized statement; (ii) In the event the debtor has entered into a voluntary payment agreement, the debtor shall give notice if he or she wants the payment plan discontinued. If no notice is given, the payment arrangement may continue. (iii) Properly executed postjudgment writs, including writs of garnishment and execution, are not required to be ceased and second or subsequent requests for information already provided do not require the cessation of collection efforts; (c) Report adverse information to consumer credit reporting agencies or credit bureaus until at least one hundred eighty days after the original obligation was received by the licensee for collection or by assignment.

RCW 19.16.250(28).

7.9 The "Prohibited Practices" section of the WCAA states in pertinent part that "No licensee or employee of a licensee shall:"

> If the claim involves hospital debt: (a) Fail to include, with the first written notice to the debtor, a notice that the debtor may be eligible for charity care from the hospital, together with the contact information for the hospital; (b) Collect or attempt to collect a claim related to hospital debt during the pendency of an application for charity care sponsorship or an appeal from a final determination of charity care sponsorship status. However, this



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

prohibition is only applicable if the licensee has received notice of the pendency of the application or appeal.

7.10 In this case, Defendant violated both the Washington Collection Agency Act and the Washington Consumer Protection Act (*per se* violation), by attempting to collect an amount that was not owed, and by failing to provide Plaintiff with the above-referenced notifications, where Defendant's communication simply stated: "LEVI, We have an important message for you from CPC. This communication is from a licensed bill collector. Please call us at 888-846-6092."

7.11 Plaintiff was injured and damaged by Defendant's unfair and deceptive acts and practices.

7.12 Defendant's unfair and deceptive acts and practices are a direct and proximate cause of Plaintiff's injuries.

7.13 Defendant's unfair acts and practices were intentional, willful, wanton, unfair, unconscionable, and outrageous.

7.14 Defendant's unfair acts and practices illustrate why an injunction is necessary to protect Plaintiff and other Washington debtors from similar harm.

## VIII. THIRD CAUSE OF ACTION

(Consumer Protection Act Violation – *In the Alternative*)

8.1 Plaintiff re-alleges paragraphs I. through VII., inclusive as though fully set forth herein.

8.2 In the alternative to a *per se* violation of Washington's CPA as alleged *Supra*, Defendant's collection actions are still "unfair" and "deceptive" as those terms are ambiguously defined and liberally construed to protect consumers. RCW 19.86.920.

8.3 Defendant's unfair and deceptive acts and practices occurred in the course of trade or commerce.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

8.4 Defendant's unfair and deceptive acts and practices affect a matter of public interest; business and debt collection.

8.5 Defendant's unfair and deceptive acts and practices have the capacity for repetition.

8.6 Plaintiff was injured and damaged by Defendant's unfair and deceptive acts and practices.

8.7 Defendant's unfair and deceptive acts and practices are a direct and proximate cause of Plaintiff's injuries.

8.8 Defendant's unfair and deceptive acts and practices were intentional, willful, wanton, unfair, unconscionable, and outrageous.

8.9 Defendant's unfair and deceptive acts and practices illustrate why an injunction is necessary to protect Plaintiff and other Washington debtors from similar harm.

## IX. FOURTH CAUSE OF ACTION

(Outrage)

9.1 Plaintiff re-alleges paragraphs I. through VIII., inclusive as though fully set forth herein.

9.2 The elements of the tort of outrage are ("1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of plaintiff." Rice v. Janovich, 109 Wn.2d 48, 61 (1987).

9.3 Washington adopted the tort of outrage and the theory of Restatement (Second) of Torts. Jackson v. Peoples Fed. Credit Union, 25 Wash.App. 81, 84, 604 P.2d 1025, 1027 (1979).

9.4 In Washington, creditors and debt collectors can be held liable for outrage damages if they employ improper, excessive, or oppressive means, while attempting to collect


Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

a debt. See Jackson at 85 and 1025; Lucero v. Cenlar FSB, W.D. Wash. Cause No. C13-0602-RSL, Doc. # 255, denying Defendant's Motion for Summary Judgment on Plaintiff's Claim of Outrage); and Vawter v. Quality Loan Serv. Corp. of Washington, 707 F.Supp.2d 1115, 1128 (W.D. Wash. 2010).

9.5 In this case, based on the lawsuits, legislation, and news, Defendant must be aware that medical billing is fraught with problems, particularly those medical debts related to Chi Franciscan entities in the Tacoma, Washington area. Defendant knows that many medical bills were never owed, were paid, partially paid, subject to Medicaid/Medicare laws, or were eligible for charity care discharge. Knowing this, Defendant developed a business model of blindly relying on unreliable sources to force payment of medical debts about which Defendant knows that most of these medical accounts are unenforceable, and some of them actually violate federal and state law. Any reasonable juror would find Defendant's entire business model extreme, outrageous, utterly unacceptable in a civilize society, intentional and reckless, and specifically designed to inflict severe emotional distress upon innocent consumers in attempt to extort payment of erroneous debts that are simply do not owe. A jury would be disgusted by this business model and would gladly pay Plaintiff emotional distress damages for falling victim to these borderline criminal practices. As the Honorable Judge Lasnik stated in Lucero v. Cenlar FSB, "...the factfinder could easily find for plaintiff..." Lucero v. Cenlar FSB at p. 14.

9.6 Defendant's actions were intentional, willful, wanton, unfair, deceptive, unconscionable, extreme, outrageous, and unreasonable.

9.7 Defendant's intentional, willful, wanton, unfair, deceptive, unconscionable, extreme, outrageous, and unreasonable actions shock the conscience.



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

9.8 Plaintiff was injured and damaged emotionally by Defendant's intentional, willful, wanton, unfair, deceptive, unconscionable, extreme, outrageous, and unreasonable actions.

9.10 Defendant's intentional, willful, wanton, unfair, deceptive, unconscionable, extreme, outrageous, and unreasonable actions were a direct and proximate cause of Plaintiff's injuries and damages.

9.11 Defendant's intentional, willful, wanton, unfair, deceptive, unconscionable, extreme, outrageous, and unreasonable actions illustrate why an injunction is necessary to protect Plaintiff and other Washington consumers from similar harm.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendant as follows:

A. For an Injunction preventing Defendant from ever again contacting Plaintiff for any reason whatsoever, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wash.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976);

B. For an Injunction preventing Defendant from ever again sending a text message to any Washington citizen in attempt to collect a medical debt, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wash.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976);


Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

C. For an Injunction preventing Defendant from ever again collecting upon the subject debt, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wash.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976);

D. For an Injunction preventing Defendant from ever selling, transferring, or assigning the subject debt, pursuant to RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wash.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976);

E. For an Injunction preventing Defendant, Defendant's customer, or any other person who may hereafter legally seek to collect on this claim, from ever being allowed to recover any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on such claim, pursuant to RCW 19.16.450, RCW 19.86.090, and Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (2007); Hockley v. Hargitt, 82 Wash.2d 337, 349-50, 510 P.2d 1123 (1973); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 783-84, 719 P.2d 531 (1986); Lightfoot v. MacDonald, 86 Wash.2d 331, 335-36, 544 P.2d 88 (1976);

F. For Actual and Compensatory damages against Defendant in an amount to be proven at trial, pursuant to RCW 19.86 *et seq*., 15 U.S.C. § 1692 *et seq*., and various common law claims;

G. For Intentional Infliction of Emotional Distress, or Negligent Infliction of Emotional Distress damages against Defendant, in the amount of $100,000.00, pursuant to 15



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

U.S.C. § 1692 *et seq*.; and Jackson v. Peoples Credit Union, 604 P.2d 1025 (1979); and Baker v. G.C. Servs. Corp., 677 F.2d 775 (9th Cir. 1982);

H. For Statutory damages against Defendant in the amount of $1,000, pursuant to 15 U.S.C. § 1692 *et seq*.;

I. For Incidental and Consequential damages against Defendant in an amount to be proven at trial;

J. For treble any "actual" damages against Defendant, up to the amount of $25,000, pursuant to RCW 19.86 *et seq*.;

K. For costs and reasonable attorneys' fees against Defendant, in an amount to be proven at trial, pursuant to 15 U.S.C. § 1692 *et seq*.; and RCW 19.86 *et seq*.;

L. For interest on the above amounts as authorized by law;

M. For other relief as the Court deems just and equitable; and

N. For leave to amend this complaint as needed and as required, including leave to seek Fed. R. Civ. P. 23 status, if information becomes available through discovery supporting numerocity, commonality, and the need for class action status.

## XI. REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests a trial by jury.

DATED this 28th day of April, 2021.

Respectfully submitted,

s//*Robert Mitchell*
ROBERT MITCHELL, WSBA #37444
Attorney for Plaintiff



Robert Mitchell, Attorney at Law
1020 N. Washington
Spokane, WA 99201
(509) 327-2224 Fax (888) 840-6003

- Electronic Exparte (3630417) -



17-2-10901-6 53202929 DC 04-29-19

FILED IN OPEN COURT EX PARTE DEPARTMENT
APR 29 2019
PIERCE COUNTY, Clerk
By Deputy

4/29/2019 514 0038

**STATE OF WASHINGTON**
**PIERCE COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON,<br>Plaintiff,<br>v.<br>FRANCISCAN HEALTH SYSTEM d/b/a CHI-FRANCISCAN HEALTH d/b/a ST. JOSEPH MEDICAL CENTER<br>Defendant. | NO. 17-2-10901-6<br>CONSENT DECREE |

## I. JUDGMENT SUMMARY

| | | |
|---|---|---|
| 1.1 | Judgment Creditor: | State of Washington |
| 1.2 | Judgment Debtor: | Franciscan Health System |
| 1.3 | Principal Judgment Amount: | $2,460,000 |
| | | Restitution pursuant to paragraph IV |
| 1.4 | Post Judgment Interest Rate: | 12% per annum |
| 1.5 | Attorney for Judgment Creditor: | Audrey Udashen<br>Assistant Attorney General |
| 1.6 | Attorney for Judgment Debtor: | Asher Funk<br>Polsinelli PC<br><br>Brad Fisher<br>Davis Wright Tremaine LLP |



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0039 514 4/29/2019

1.7 Plaintiff, State of Washington (State), having conducted an investigation and commenced this action pursuant to the Consumer Protection Act, RCW 19.86;

1.8 Defendant, Franciscan Health System (FHS), was served with a Summons and Complaint in this matter;

1.9 The State appears by and through its attorneys, Robert Ferguson, Attorney General, and Audrey Udashen, Assistant Attorney General;

1.10 Defendant appears by and through its attorneys, Asher Funk of Polsinelli PC and Brad Fisher of Davis Wright Tremaine LLP;

1.11 The State and Defendant agree on a basis for the settlement of the matters alleged in the Complaint and to the entry of this Consent Decree against Defendant without the need for trial or adjudication of any issue of law or fact;

1.12 Defendant recognizes and states that this Consent Decree is entered into voluntarily and that no promises or threats have been made by the Attorney General's Office or any member, officer, agent, or representative thereof to induce Defendant to enter into this Consent Decree, except as provided herein;

1.13 Defendant waives any right it may have to appeal from this Consent Decree;

1.14 Defendant further agrees that this Court retains jurisdiction of this action and jurisdiction over this Defendant for the purpose of implementing and enforcing the terms and conditions of this Consent Decree and for all other purposes related to this matter;

The Court finds no just reason for delay.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## II. GENERAL

2.1 This Court has jurisdiction over the subject matter of this action and over the parties based on the State's claims under the Consumer Protection Act, RCW 19.86.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0040 4/29/2019 514

2.2 For purposes of this Consent Decree, the term "Defendant" where not otherwise specified shall mean FHS including the following acute care hospitals: St. Elizabeth Hospital, St. Francis Hospital, Highline Medical Center, Harrison Medical Center, St. Anthony Hospital, St. Clare Hospital, and St. Joseph Medical Center. Certain elements of this Consent Decree apply to one of Defendant's acute care hospitals, St. Joseph Medical Center ("St. Joseph") only. Those elements are specifically identified below.

2.3 Neither this Consent Decree nor the fact of its entry constitutes evidence or an admission by any party regarding the existence or non-existence of any issue, fact, or violation of any law alleged by the State.

2.4 This Consent Decree resolves with prejudice all claims raised and which could have been raised by the State against Defendant, its current and former parents, subsidiaries, affiliates, contractors, vendors, agents (including Conifer Health Solutions, LLC) and successors-in-interest, and the officers, directors, attorneys and employees thereof, pertaining to the acts or omissions described in the Complaint filed in this matter. Upon entry of this Consent Decree, all claims in this matter, not otherwise addressed by the Consent Decree, are dismissed with prejudice.

## III. INJUNCTIONS

3.1 Application of Injunctions. The injunctive provisions of this Consent Decree shall apply to Defendant and Defendant's successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant.

3.2 Notice. Within thirty (30) days from the date of entry of this Consent Decree, Defendant shall inform its successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant,



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

who are involved in any way with the development, implementation, or maintenance of Defendant's financial assistance program or its financial collections, of the terms and conditions of this Consent Decree and shall direct those persons and entities to comply with this Consent Decree.

3.3 Permanent Injunctions. Defendant's successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant shall engage in or refrain from engaging in the following acts and practices:

3.3.1 Defendant shall maintain charity care policies and practices that are consistent with the requirements of the Washington Charity Care Act and its implementing regulations, codified at RCW 70.170 and WAC Chapter 246-453, as amended or modified from time to time. For purposes of this Consent Decree, the terms "charity care" and "financial assistance" shall be used interchangeably.

3.3.2 Defendant shall neither make a statement nor take any action that is likely to give a reasonable patient or financially responsible party ("responsible party") the impression that a patient will not receive medically necessary hospital care unless the patient or responsible party makes a payment of the patient liability portion of the charges, including but not limited to continuing to ask for immediate payment of any amount after the patient has stated a preference to be billed later or an inability to pay.

3.3.3 Defendant shall not represent to any patient or responsible party, directly or indirectly, that they must pay any amount of money in order to apply for financial assistance.

3.3.4 Defendant shall neither make a statement nor take any action that is likely to dissuade a patient or responsible party from receiving information about Defendant's financial assistance program, or from applying for financial assistance.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0042 514 4/29/2019

3.4 Five Year Injunctions. For five years from the date of entry of this Consent Decree, Defendant's successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant shall engage in or refrain from engaging in the following acts and practices:

3.4.2 Defendant shall develop and implement policies and procedures to ensure that it reasonably complies with the following requirements.

3.4.2.1 When conducting any pre-treatment process in which patients' liability portions are identified or payment is requested from patients or responsible parties, including registration or financial clearance processes conducted after a medical screening examination, or when contacting patients for payment information after the patient receives unscheduled, urgent, or emergency care, Defendant shall do the following before asking patients to pay charges for medically necessary hospital care not covered by third-parties (including but not limited to copayments, coinsurance, and deductibles): (1) inform the patient or responsible party orally that financial assistance is available to those who qualify; (2) provide the patient or responsible party with Defendant's plain language summary ("PLS") of its financial assistance program, or if the contact occurs over the telephone, direct the patient or responsible party to the location (URL) on Defendant's website where the PLS can be found; and, (3) ask the patient or responsible party if they would like to explore their potential eligibility for financial assistance.

3.4.2.2 If a patient or responsible party indicates an interest in financial assistance, or at any time expresses an inability to pay all or part of their liability, if the patient is at the site of care, Defendant shall provide the patient with a financial assistance packet in hard copy and refer the patient to personnel who can assist the patient in filling out the application or applying for third-party coverage. If the patient is not at the site of care, Defendant shall refer the patient or responsible party to the financial assistance information and application on its website, provide the website URL, and provide phone numbers of staff who can assist the



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0043 514 4/29/2019

patient. Defendant shall also offer to mail or e-mail a copy of the financial assistance packet to the patient or responsible party before the patient's scheduled procedure.

3.4.2.2.1 An expression of an inability to pay from a patient or a responsible party shall include, but not be limited to: (1) a representation that they are unable to pay or may experience difficulty paying for some or all of the patient responsibility portion of the cost of the care; (2) informing Defendant of apparent grounds for presumptive eligibility, such as receipt of means-tested public benefits or homelessness, or Defendant's independent observation of apparent grounds for presumptive eligibility; or (3) any other conduct or activity which is set forth in FHS's published financial assistance policy, as approved by the Washington State Department of Health.

3.4.2.2.2 The financial assistance packet shall consist of Defendant's PLS, an application for financial assistance, the URL for Defendant's website with information on its financial assistance program, the URL for the U.S. Dept. of Health & Human Services' current Federal Poverty Guidelines, and contact information for Defendant's financial counselors.

3.4.2.3 If a patient or responsible party expresses an interest in financial assistance or an inability to pay at any time during an interaction, Defendant shall thereafter refrain from requesting payment for medically necessary hospital care in any amount during that interaction with the patient and shall follow the procedure set forth in Section 3.4.2.2.

3.4.2.4 Defendant may provide the patient or responsible party with information about the amount of the patient's financial responsibility, even if the patient has expressed an interest in financial assistance or an inability to pay, as long as Defendant clearly identifies the information as being solely for the purpose of providing the patient with information, and not for the purposes of seeking or demanding payment. If a patient has not expressed an interest in financial assistance or an inability to pay, Defendant may provide such information and request payment of the patient's financial responsibility during that interaction.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0044 514 4/29/2019

3.4.2.5 Defendant's patient financial counselors shall make reasonable efforts to contact a patient who requests information about financial assistance or expresses an inability to pay no later than five (5) business days after the patient's date of service. Such contact will be in-person if the patient remains in the hospital, or by phone before admission (for pre-scheduled patients), or after discharge for patients who the financial counselor is unable to meet with while they are present at the hospital. If Defendant is unable to reach the patient in-person or by phone, Defendant will contact the patient by mail at the address it has on file, and request that the patient call Defendants' patient financial counselors to discuss possible financial assistance.

3.4.2.6 Defendant's patient financial counselors shall ask patients if they need translation or interpretation services to assist them in applying for third-party coverage or financial assistance. Defendant shall provide translation or interpretation services for patients who require such services in accordance with applicable law.

3.4.2.7 For patients who have expressed an interest in financial assistance or an inability to pay, Defendant's patient financial counselors will make reasonable efforts to collect information about a patient's family size and household income to assist Defendant in determining the patient's potential eligibility for third-party sponsorship and financial assistance. Defendant's patient financial counselors will also provide an overview of Defendant's financial assistance program, as appropriate.

3.4.2.8 A patient may request information about financial assistance from Defendant, or express an inability to pay all or part of their liability after receiving care. Within seven (7) days after receiving such request, Defendant shall mail the patient a financial assistance packet to the address it has on file, and shall thereafter make an attempt to contact the patient by phone at the phone number it has on file.

3.4.2.9 No billing or collection activity shall be directed towards a patient or responsible party who has requested information about financial assistance or



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0045

expressed an inability to pay for fourteen (14) days after Defendant receives such information or expression. If the patient's medical condition or other factors indicate that the patient will require more time to secure and present documentation to Defendant for Defendant to make a final determination of eligibility for financial assistance, Defendant will extend this time period as reasonably necessary.

3.4.2.10 If a patient or responsible party submits a complete charity care application, Defendant shall refrain from engaging in billing or collection activity directed towards the patient or the responsible party until the time the patient's charity care application is processed.

3.4.2.11 If a patient or responsible party submits an incomplete financial assistance application, Defendant shall contact the patient by mail and describe the missing documentation needed to complete the application. Defendant shall refrain from engaging in billing or collection activity directed towards the patient or the responsible party for fourteen (14) days after the letter is mailed. During this time, if Defendant has not received the missing documentation, Defendant's personnel shall call the patient or responsible party at the phone number Defendant has on file. If Defendant receives documents from the patient or responsible party that complete their charity care application, Defendant shall follow the procedure set forth in Section 3.4.2.10.

3.4.2.12 Defendant may bill and collect from any third-party coverage that may be available for the patient at any time after the care is provided.

3.4.2.13 Defendant shall continue to extend charity care to patients with income less than or equal to 300% of the Federal Poverty Guidelines.

3.4.3 Defendant shall request that Wellfound Behavioral Health, an inpatient behavioral health hospital, jointly owned and operated by Defendant and MultiCare Health System maintain charity care eligibility criteria no less generous than those in effect at Wellfound at the time of the entry of this Consent Decree.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0046

3.4.4 If changes are made to RCW 70.170, WAC 246-453 or any other Washington State statute or regulation relating to hospitals' charity care programs such that compliance with any provision of paragraphs 3.4.2.1 through 3.4.2.13 is no longer consistent with Washington state law, Plaintiff and Defendant shall meet and confer regarding the amendment or dissolution of these terms. If Plaintiff and Defendant cannot agree to the modification or dissolution of these terms, either party may petition this Court, with notice and opportunity to be heard by the opposing party, for modification of these injunctive terms.

3.4.5 Defendants shall ensure that biannual trainings take place for all staff members whose job responsibilities include conducting pre-registration, financial clearance, point-of-service registration, collection of payment, or financial counseling services, whether employed by Defendant, its vendors or agents, on the requirements of this Consent Decree and Washington State charity care requirements.

3.4 Reporting. For twenty four (24) months from the entry of this Consent Decree, St. Joseph shall provide annual reports to the State, which include the following information:

3.4.1 Identification of the amount of charity care St. Joseph provided during the prior twelve (12) months and the number of recipients of charity care during that time period.

3.4.2 Identification of the date, time, and place of any training provided to staff members, whether they are employed by St. Joseph or its agents, related to charity care or upfront collection and copies of any materials utilized at these trainings.

3.4.3 Copies or photographs of all notices relating to charity care posted in any location at St. Joseph, along with an identification of the location of the sign.

3.4.4 Copies of all materials distributed to patients relating to charity care.

## IV. RESTITUTION

4.1 Pursuant to RCW 19.86.080, Defendant will take the following steps to make restitution to its patients.

4.2 Within one hundred twenty (120) days of the entry of this Consent Decree,



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0047 514 4/29/2019

Defendant shall: (a) discharge any outstanding account balances for Uninsured Patients who received care at one of Defendant's acute care hospitals between January 1, 2012 and July 1, 2017, and who meet the Trans Union LLC community or credit-based criteria indicating that the patient had an estimated income of less than 200% of the Federal Poverty Guidelines ("FPG"), and; (b) issue the Payment Refunds (as defined below) to Uninsured Patients.[1]

For the purposes of this Consent Decree "Uninsured Patients" shall mean those patients who received care at Defendant's acute care hospitals, and lacked any source of third-party sponsorship, including but not limited to commercial or governmental insurance, coverage under any state program including Worker's Compensation, PIP, or Crime Victim's benefits, or received a settlement or judgment from a tortfeasor that includes damages based on the patient's medical expenses, including medical expenses incurred in receiving medically necessary hospital care.

For the purposes of this Consent Decree "Payment Refunds" shall mean: (i) the full refund of any prior payments for care at one of Defendant's acute care hospitals between January 1, 2012 and July 1, 2017, made by an Uninsured Patient who meets the Trans Union LLC community or credit-based criteria indicating that the patient had an estimated income of less than 100% of the FPG, and; (ii) a 40% refund of any prior payments made between January 1, 2012 and July 1, 2017, for care at St. Joseph Medical Center, Harrison Medical Center and Highline Medical Center, or a 25% refund of any prior payments made between January 1, 2012 and July 1, 2017 for care at St. Elizabeth Hospital, St. Francis Hospital, St. Anthony Hospital, and St. Clare Hospital, by an Uninsured Patient who meets the Trans Union LLC community or credit-based criteria indicating that the patient had an estimated income of between 101% and 200% of the FPG. The partial refund amounts set forth above (e.g. 40% and 25%) shall be applied at the individual account level.

[1] Franciscan Health System acquired Highline Medical Center on April 1, 2013 and Harrison Medical Center on August 1, 2013 (collectively the "Affiliation Dates"). Accordingly, any discharge or refunds to patients who sought care at those facilities will be limited to the timeframe of the Affiliation Dates through July 1, 2017.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0048

4.2.1 The receipt of a discharge or refund pursuant to this paragraph shall not limit a patient's right to apply for charity care for any accounts not refunded or discharged pursuant to this Consent Decree.

4.2.2 Within thirty (30) days of discharging an eligible account, Defendant shall transmit the correspondence attached as Exhibit A to the patient receiving the discharge at the address Defendant has on file for the patient, by US mail, first class. The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes. This correspondence shall identify the amount discharged and the account number(s) associated with the discharged accounts.

4.2.3 Defendant shall transmit refunds to patients by check, payable to each patient at the address Defendant has on file for the patient. The refund check shall be accompanied by the correspondence attached as Exhibit B. The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.

4.2.3.1 Defendant shall not be responsible for locating patients who no longer reside at the last known address that Defendant has on file.

4.2.3.2 If any check issued pursuant to 4.2.3 is returned to sender, or is not cashed before it becomes invalid or expired, an amount equal to the check will be sent to the Washington State Department of Revenue ("Department of Revenue") according to its usual protocol for the disposition of unclaimed property.

4.2.3.3 If an intended recipient of an unclaimed, expired check contacts Defendant and requests that a check be sent to an address other than the one on file with the Defendant at any time prior to Defendant sending the check to the Department of Revenue, Defendant shall resend the check to the address provided by the patient.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0049 514 4/29/2019

4.3 Within ninety (90) days of the entry of this Consent Decree, Defendant shall transmit the correspondence attached as Exhibit C to all Uninsured Patients who received care at any of its facilities between 2012 and 2017. The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.

4.4 Within ninety (90) days of the entry of this Consent Decree, St. Joseph shall transmit the notice attached as Exhibit C to all patients it treated between 2012 to 2017 who were: (1) treated in or admitted through its emergency department; (2) who had a Medicare Fee-For-Service plan but did not have a Medicare supplement plan; and (3) all Medicaid-insured patients treated in St. Joseph's behavior health unit. The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.

4.5 St. Joseph will post notice of the settlement in public areas of its facilities, including (1) areas where patients are admitted or registered; (2) the emergency department; and (3) financial service or billing areas accessible to patients. Such notice shall be subject to the State's approval.

4.6 St. Joseph will post additional, easy-to-view information on its website and on its social media accounts concerning the availability of financial assistance and how it can be obtained. Such notices shall be subject to the State's approval.

4.7 St. Joseph shall notify patients of this Consent Decree and of their right to apply for charity care through Tacoma-area media outlets, including newspapers, magazines, and radio stations. These outlets shall include Spanish-language publications and outlets. Such notice shall: (1) inform patients of the settlement between St. Joseph and the State; (2) explain that all patients have the right to apply for charity care for the patient responsibility portion of paid and



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0050

unpaid accounts at St. Joseph; (3) provide contact information for St. Joseph's Financial Counselors; and, (4) direct patients to a website that includes the PLS of St. Joseph's charity care program and a copy of St. Joseph's charity care application.

4.7.1 Defendant shall provide at least ten (10) notices of the settlement through media outlets within ninety (90) days of the entry of the Consent Decree.

4.7.2 Defendant shall provide the State with a list of media outlets it will use to provide notice of the settlement within thirty (30) days of the entry of the Consent Decree. This list shall be subject to the State's approval.

4.7.3 Defendant shall provide copies of the content of the notices it will provide through media outlets, whether in written or oral form, to the State. The content of these notices shall be subject to the State's approval.

4.8 St. Joseph will conduct education and outreach through community and social services organizations that have contact with or serve patients within St. Joseph's primary service area that may qualify for financial assistance. St. Joseph will hold live meetings, whose primary purpose will be to inform community members about the availability of financial assistance at St. Joseph for current and prior services, as well as the support that is available during the application process, including interpreters. St. Joseph is permitted to use video or pre-recorded media during the education and outreach sessions, so long as a St. Joseph representative is present at the sessions to greet attendees and answer questions. St. Joseph will hold such meetings at the following organizations: Project Access of Pierce County, Lutheran Community Services, Aging and Disability Resources, South Sound Outreach, the Tacoma Urban League, and one organization that primarily serves Spanish-speaking individuals.

4.8.1 St. Joseph will conduct at least one live meeting at each organization identified above within six (6) months of the entry of the Consent Decree.

4.8.2 St. Joseph will work with the organizations identified above to publicize the live meetings within the community served by each organization.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0051 514 4/29/2019

4.8.3 St. Joseph will distribute written materials regarding its charity care program at each of these meetings.

4.8.4 St. Joseph will inform the State of the date, time, and location of these meetings at least one (1) month in advance of their occurrence.

4.9 Defendant shall extend charity care to Uninsured Patients for the patient responsibility portion of paid and unpaid accounts who received care at any of Defendant's acute care hospitals between 2012 and 2017. Those patients may either: (i) complete the attestation form included with Exhibit C, or (ii) submit a charity care application demonstrating that their household income was at or below 200% of the Federal Poverty Guidelines at the time of their treatment or the time of the submission of their charity care application, provided that the submission is within two (2) years of the date of service. Defendant shall refund any payments or discharge any amounts owing on the accounts of patients approved for charity care.

4.9.1 Within thirty (30) days of discharging an eligible account, Defendant shall transmit the correspondence attached as Exhibit A to the address the Defendant has on file for the patient. This correspondence shall identify the amount discharged and the account number(s) associated with the discharged accounts.

4.9.2 Defendant shall transmit refunds to patients by check, payable to each patient at the address Defendant has on file for the patient. The refund check shall be accompanied by the correspondence attached as Exhibit B.

4.9.2.1 Defendant shall not be responsible for locating patients who no longer reside at the last known address that Defendant has on file.

4.9.2.2 If any check issued pursuant to 4.9 is returned to sender, or is not cashed before it becomes invalid or expired, an amount equal to the check will be sent to the Department of Revenue according to its usual protocol for the disposition of unclaimed property.

4.9.2.3 If an intended recipient of an unclaimed, expired check contacts Defendant and requests that a check be sent to an address other than the one on file with the



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

0052 514 4/29/2019

Defendant at any time prior to Defendant sending the check to the Department of Revenue, Defendant shall resend the check to the address provided by the patient.

4.9.3 If Defendant reported any accounts discharged or refunded pursuant to this Section 4.9 as delinquent, charged off, or as bad debt to any credit reporting agencies ("CRAs"), Defendant shall report the account as paid in full to the CRAs and request the deletion of any associated trade lines reflecting the account as delinquent, defaulted, charged off, or bad debt

4.9.4 Consistent with the Washington Charity Care Act and its implementing regulations, codified at RCW 70.170 and WAC Chapter 246-453, as amended or modified, Defendant shall allow any patients who received care at one of its acute care hospitals between 2012 and 2017 to apply for financial assistance through Defendant's ordinary process, by submitting a financial assistance application.

4.10 Within six (6) months of the entry of this Consent Decree, Defendants shall provide a report to the State which identifies (i) the number of patients it issued refunds to pursuant to this Consent Decree; (ii) the amount of these refunds; (iii) the number of patients whose accounts were discharged pursuant to this Consent Decree; and, (iv) the amount of these discharges.

4.11 Defendant may, at its option and expense, retain a qualified third party contractor to assist with the obligations set forth in 4.2, 4.3 and 4.4 of this Consent Decree.

**V. MONETARY PAYMENT**

5.1 Pursuant to RCW 19.86.080, Defendant shall pay the State the amount of $2,460,000. The Attorney General shall use the funds for recovery of its costs and attorneys' fees in investigating this matter, future monitoring and enforcement of this Consent Decree, future enforcement of RCW 19.86, or for any lawful purpose in the discharge of the Attorney General's duties at the sole discretion of the Attorney General.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0053

5.1.1 The Attorney General's Office shall use or distribute at least $100,000 of this payment to provide public education and outreach related to the availability of charity care in Washington State at the sole discretion of the Attorney General.

5.2 Payment owing under this provision shall be in the form of a valid check paid to the order of the "Attorney General—State of Washington" and shall be due and owing within thirty (30) days of the entry of the Consent Decree. Payment shall be sent to the Office of the Attorney General, Attention: Margaret Farmer, Administrative Office Manager, 800 Fifth Avenue, Suite 2000, Seattle, Washington 98104-3188.

5.3 Defendant's failure to timely make payments as required by this Consent Decree by the date of entry of this Consent Decree, without written agreement by the State, shall be a material breach of this Consent Decree.

## VI. ENFORCEMENT

6.1 Violation of any of the injunctions contained in this Consent Decree, as determined by the Court, shall subject the Defendants to a civil penalty of not more than $25,000 per violation pursuant to RCW 19.86.140.

6.2 Violation of any of the terms of this Consent Decree, as determined by the Court, shall constitute a violation of the Consumer Protection Act, RCW 19.86.020.

6.3 This Consent Decree is entered pursuant to RCW 19.86.080. Jurisdiction is retained for the purpose of enabling any party to this Consent Decree with or without the prior consent of the other party to apply to the Court at any time for enforcement of compliance with this Consent Decree, to punish violations thereof, or to modify or clarify this Consent Decree.

6.4 Representatives of the Office of the Attorney General shall be permitted, upon advance written notice of twenty (20) days to Defendant, to access, inspect and/or copy non-privileged business records or documents in possession, custody or under control of Defendant (Business Records) to monitor compliance with this Consent Decree, provided that the inspection and copying shall avoid unreasonable disruption of Defendant's business activities.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0054

The State of Washington shall not disclose any Business Records unless such disclosure is required by law. In the event that a representative of the Office of the Attorney General receives a request under the Public Records Act, subpoena, or other demand for production that seeks the disclosure of Business Records, the Office of the Attorney General shall notify Defendant as soon as practicable and in no event more than thirty (30) calendar days after receiving such request and shall allow Defendant a reasonable time, not less than ten (10) calendar days, from the receipt of such notice to seek a protective order relating to the Business Records or to otherwise resolve any disputes relating to the production of the Business Records before Washington discloses any Business Records. Nothing in this Consent Decree shall affect State of Washington's compliance with the Public Records Act, RCW 42.56.

6.5 To monitor compliance with this Consent Decree, the State shall be permitted to serve interrogatories pursuant to the provisions of CR 26 and CR 33 and to question Defendant or any officer, director, agent, or employee of Defendant by deposition pursuant to the provisions of CR 26 and CR 30 provided that the State attempts in good faith to schedule the deposition at a time convenient for the deponent and his or her legal counsel.

6.6 This Consent Decree in no way limits the Office of the Attorney General, or any other state agency, from conducting any lawful non-public investigation to monitor Defendant's compliance with this Consent Decree or to investigate other alleged violations of the CPA which may include but is not limited to interviewing customers or former employees of Defendant.

6.7 Nothing in this Consent Decree shall be construed as to limit or bar any other governmental entity or consumer from pursuing other available remedies against Defendant beyond any limits or bars otherwise applicable by operation of law.

6.8 Under no circumstances shall this Consent Decree or the name of the State of Washington, the Office of the Attorney General, Consumer Protection Division, or any of their employees or representatives be used by Defendant in connection with any selling, advertising,



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4/29/2019 514 0055

or promotion of products or services, or as an endorsement or approval of Defendant's acts, practices or conduct of business.

6.9 This Consent Decree shall be binding upon and inure to the benefit of Defendant's successors and assigns. Defendant and its successors and assigns shall notify the Attorney General's Office at least thirty (30) days prior to any change-in-control of Defendant that would change the identity of the corporate entity responsible for compliance obligations arising under this Consent Decree, including but not limited to dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. Provided, however, that with respect to any proposed change in the corporation about which Defendant and its successors and assigns learn less than thirty (30) days prior to the date such action is to take place, Defendant and its successors and assigns shall notify the Attorney General's Office as soon as is practicable after obtaining such knowledge.

6.10 Any notice or other communication required or permitted under this Consent Decree shall be in writing and delivered to the following persons or any person subsequently designated by the parties:

<u>For the State of Washington</u>:

Office of the Attorney General
Consumer Protection Division
Attention: Audrey Udashen, AAG
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

<u>For Defendants:</u>

CHI Franciscan
Corporate Office
1145 Broadway Plaza, Suite 1200
MS 07-00
Tacoma, WA 98402
Attn: Chief Executive Officer

<u>With a copy to</u>:

CHI Franciscan
Corporate Office

- Electronic Exparte (3630417) -

0056 514 4/29/2019

1145 Broadway Plaza, Suite 1200
MS 07-00
Tacoma, WA 98402
Attn: Regional General Counsel

6.11 The Clerk of Court is ordered to enter the foregoing Judgment and Consent Decree immediately.

DONE IN OPEN COURT this 29 day of April, 2019.

JUDGE/COURT COMMISSIONER

IN OPEN COURT
EX PARTE DEPARTMENT.
APR 29 2019
PIERCE COUNTY, Clerk
By Deputy

Approved for entry and presented by:

ROBERT W. FERGUSON
Attorney General

AUDREY L. UDASHEN, WSBA #42868
Assistant Attorney General
Attorney for Plaintiff State of Washington

Approved for Entry, Notice of Presentation Waived:

ASHER D. FUNK, *pro hac vice*
Polsinelli PC

BRAD FISHER, WSBA #19895
REBECCA J.FRANCIS, WSBA #41196
Davis Wright Tremaine LLP

Attorneys for Defendant Franciscan Health Systems d/b/a CHI-Franciscan Health d/b/a St. Joseph Medical Center

Washington State Department of Health

KELSEY L. MARTIN, WSBA #50296
Assistant Attorney General
Attorney for the Washington State Department of Health



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

0057 514 4/29/2019

# EXHIBIT A

0058 4/29/2019 514

- Electronic Exparte (3630417) -




**Bob Ferguson**
**ATTORNEY GENERAL OF WASHINGTON**
Consumer Protection Division
800 Fifth Avenue • Suite 2000• MS TB 14 • Seattle WA 98104-3188
(206) 464-7745

**Good news - you no longer owe a debt!**

Dear Patient:

The Attorney General's Office protects all Washingtonians from unfair and deceptive business practices. My team and I work hard to hold businesses accountable and obtain justice for Washingtonians when businesses don't play by the rules.

My office filed a lawsuit against St. Joseph Medical Center alleging that it failed to make financial assistance accessible to low-income patients from 2012 to 2017. My office and St. Joseph Medical Center's parent company, CHI Franciscan, recently entered into an agreement to settle this lawsuit. A copy of the settlement is available here: [insert link to Consent Decree].

As part of the settlement, CHI Franciscan can no longer collect on certain accounts owed to it by thousands of charity care eligible patients treated at its Washington hospitals. You are a member of this group.

**As a result, you no longer owe [amount discharged] on [account number(s)] to [insert hospital name(s)].**

If you have questions about this letter or CHI Franciscan's charity care program please contact (888) 779-6380.

Sincerely,

BOB FERGUSON
Attorney General

RWF/jlg
Enclosures

0060

- Electronic Exparte (3630417) -




514

**Bob Ferguson**
**ATTORNEY GENERAL OF WASHINGTON**
**Error! Not a valid result for table.**

4/29/2019

**Good news – refund enclosed!**

Dear Patient:

The Attorney General's Office protects all Washingtonians from unfair and deceptive business practices. My team and I work hard to hold businesses accountable and obtain justice for Washingtonians when businesses don't play by the rules.

My office filed a lawsuit against St. Joseph Medical Center alleging that it failed to make financial assistance accessible to low-income patients from 2012 to 2017. My office and St. Joseph Medical Center's parent company, CHI Franciscan, recently entered into an agreement to settle this lawsuit. A copy of the settlement is available here: [insert link to Consent Decree].

As part of the settlement, CHI Franciscan owes you money. Specifically, CHI Franciscan must refund money paid by patients who were eligible for financial assistance but did not get it. Thanks to the efforts of my team, you are receiving the enclosed check because you meet this criteria and are eligible for a refund.

If you have questions about this letter or CHI Franciscan's charity care program please contact (888) 779-6380.

Sincerely,

Bob Ferguson

BOB FERGUSON
Attorney General

RWF/jlg
Enclosures

- Electronic Exparte (3630417) -

4/29/2019 514 0061

# EXHIBIT C

0062

4/29/2019 514

- Electronic Exparte (3630417) -




**Bob Ferguson**
**ATTORNEY GENERAL OF WASHINGTON**
Consumer Protection Division
800 Fifth Avenue • Suite 2000• MS TB 14 • Seattle WA 98104-3188
(206) 464-7745

**ACT NOW! You may be eligible for a refund or forgiveness of medical debt.**

Dear Patient:

The Attorney General's Office protects all Washingtonians from unfair and deceptive business practices. My team and I work hard to hold businesses accountable and obtain justice for Washingtonians when businesses don't play by the rules.

My office filed a lawsuit against St. Joseph Medical Center alleging that it failed to make financial assistance accessible to low-income patients from 2012 to 2017. My office and St. Joseph Medical Center's parent company, CHI Franciscan, recently entered into an agreement to settle this lawsuit. A copy of the settlement is available here: [insert link to Consent Decree].

This settlement allows patients who were qualified financial assistance to receive a refund or forgiveness of debt for care provided to them from 2012-2017 at the following hospitals: St. Joseph Medical Center, St. Elizabeth Hospital, St. Francis Hospital, Highline Medical Center, Harrison Medical Center, St. Anthony Hospital, and St. Clare Hospital.

**Here is what you need to do to see if you are eligible for a refund or debt forgiveness:**

- Consult the enclosed chart to see if your family income at the time you received treatment qualifies you for financial assistance; and
- If so, please return the enclosed form to be considered for financial assistance.

**We are working hard to make sure every eligible patient receives a refund and debt forgiveness, but we need you to act now!**

If approved for financial assistance, you will receive a refund of what you paid to CHI Franciscan hospitals. You will also be notified of any amount you no longer owe to CHI Franciscan hospitals.

If you have questions about this letter or CHI Franciscan's charity care program please contact (888) 779-6380.

Sincerely,

[signature]

BOB FERGUSON
Attorney General

68325141.1

0064 514 4/29/2019

- Electronic Exparte (3630417) -

**Your Income Must Be Less Than or Equal to the Amounts in the Chart Below to Qualify for Financial Assistance**

| 200% of The Federal Poverty Guidelines - 2017 | |
|---|---|
| **Household / Family Size** | **Annual Household Income Must Be Less Than or Equal To:** |
| 1 | $24,120 |
| 2 | $32,480 |
| 3 | $40,840 |
| 4 | $49,200 |
| 5 | $57,560 |
| 6 | $65,920 |
| 7 | $74,280 |
| 8 | $82,640 |
| For families/households with more than 8 persons, add $8,360 for each additional person. | |